IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case Number:  4:22CR00396-1 CDP |
| | ) | |
| CAMERON MCGHEE | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Comes Now Counsel for Defendant, Cira Duffe, and submits the following memorandum to aid this Honorable Court in determining the appropriate sentence in this cause. Based upon the Pre-Sentence Investigation report and the following supplemental information, Counsel respectfully submits that a sentence below the advisory guideline followed by a term of supervised release is sufficient to achieve the sentencing objectives before the Court.

**I.      Procedural History**

On February 13, 2024, Cameron McGhee pled guilty in the above-styled cause to two counts of Cyberstalking and one count of Threatening a Federal Official.  *See* Presentence Report, Doc. # 93 ("PSR") at ¶ 1.  He did so pursuant to a written plea agreement where the Government recommended a two-level reduction for acceptance of responsibility pursuant to USSG §3E1.1(a).  *See id.* At ¶ 7.

Mr. McGhee provided a truthful admission regarding his involvement in the offense, accepted responsibility for his criminal conduct, entered a plea of guilty prior to the commencement of trial and has a criminal history score of zero.  *See id.* at ¶¶ 24, 58.   Defendant McGhee has a total offense level of 20 and a criminal history category of I with a guideline range of 33 months to 41 months.  Mr. McGhee suffers from a long-standing diagnosis of Asperger Syndrome (Autistic Spectrum Disorder), a history of anxiety disorder, borderline personality disorder, and unspecified personality disorder.  *See id.* at ¶ 106.

1

*See* Psychological Evaluation, Doc. # 65 at p. 4 (Court PageID #166).

At the time of sentencing, Mr. McGhee will have been confined on counts I and II for nearly 2 years. See PSR at p.1 ("Release Status"). Count III occurred on or about December 11, 2022, subsequent to Defendant's incarceration.

**II.     The §3553(a) Purpose and Factors Support a Downward Variance**

The Sentencing Reform Act "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." Kimbrough, 552 U.S. at 101, 128 S.Ct. 558 (quoting § 3553(a)). In determining an appropriate sentence, district courts must consider a number of factors, including: the nature and circumstances of the offense, the history and characteristics of the defendant, and sentencing range established by the Guidelines, any pertinent policy statements issued by the Sentencing Commission, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a).

There are four purposes of sentencing[1] and six factors to consider in connection with them.[2] The Guidelines are only one factor to consider and deserve no greater weight than any other factor. *See Kimbrough v. United States*, 552 U.S. 845, 90 (2007). Thus, this Court may not presume a sentence within the guideline range is reasonable. *See Rita v. United States,* 551 U.S. 338, 351 (2007). Nor may it presume

---

[1] The purposes of sentencing are:
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.
18 U.S.C. §3553(a)(2)(A)-(D).

[2] The factors to consider in connection with the purposes of sentencing are:
    (A) the nature and circumstances of the offense and the history and characteristics of the defendant;
    (B) the kinds of sentences available;
    (C) the guidelines promulgated by the Sentencing Commission;
       any pertinent policy statement issued by the Sentencing Commission;
    (D) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and
    (E) the need to provide restitution to any victims of the offense.
18 U.S.C. §3553(a)(1)-(7).

that a sentence outside the guideline range is unreasonable. *See Gall v. United States,* 552 U.S. 38, 51 (2007). Furthermore, this Court may not require "extraordinary circumstances" to justify a sentence below the guidelines nor "use a rigid mathematical formula to determine[e] the strength of the justification required for a specific sentence." *Id.* at 47. These rules apply regardless of whether the guideline derives from the United States Sentencing Commission ("the Commission") or a policy determination of Congress. *See Kimbrough*, 552 U.S. at 109-110.

The Sentencing Guidelines specifically authorize a court to consider "the history and characteristics of the defendant" when determining whether a sentence is sufficient, but not greater than necessary, to comply with the purposes of §3553(a). 18 U.S.C. §3553(a)(1). This includes consideration of a defendant's mental and emotional condition. *See United States v. Almenas*, 553 F.3d 27, 37 (1st Cir. 2009) (affirming sentence where district court considered defendant's history and circumstances, including his physical and mental condition). "Evidence regarding social background and mental health is significant, as there is a 'belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background or to emotional or mental problems, may be less culpable than defendant's who have no such excuse.'" *Douglas v. Woodford*, 31 F.3d 1079, 1090 (9th Cir. 2003).

Even where a mitigating factor does not warrant a downward departure, this Court may still consider the factor to justify a variance below the Sentencing Guidelines range. *See Rita v. United States*, 551 U.S. 338, 351 (2007). "There may well be cases that would not justify a departure under the Guidelines, but which are appropriate for a variance." *United States v. Robinson,* 454 F.3d 839, 842 (8th Cir. 2006). The mental condition of the defendant is an established basis for granting a variance below the Sentencing Guidelines. *See United States v. Myers,* 503 F.3d 676, 687 (2007) (affirming district court's downward variance that considered defendant's struggle with mental illness).

A.    **The Nature and Circumstances of the Offense**

The nature and circumstances of count one of cyberstalking are that over the course of 13 days, Mr.

3

McGhee used a cell phone to send approximately 200 text messages to retired United States Air Force ("USAF") Senior Master Sergeant, D.W.. *See* PSI at ¶ 17.  D.W. was McGhee's Flight Superintendent in which he oversaw the dining facility and fitness centers at which Mr. McGhee worked as a member of the USAF.  *Id.* at ¶ 16.  Defendant and D.W. did not have a social relationship and prior to receiving these text messages from Mr. McGhee between June 23, 2022 and July 5, 2022, D.W. had not heard from McGhee since 2020. *Id.* at ¶ 22.  Defendant had no physical contact with D.W. nor did D.W. sustain physical injury from the text messages sent by Defendant.

The nature and circumstances as to count two of cyberstalking are that over the course of 9 minutes, on July 4, 2022, "between 7:43 and 7:52", Mr. McGhee used a cell phone to send approximately 6 text messages to D.W's wife. *Id.* at ¶ 18.  Defendant had no physical contact with D.W.'s wife nor did D.W.'s wife sustain physical injury from the messages sent by Defendant.

The nature and circumstances as to count three are that during a recorded telephone call between Defendant, who was confined pursuant to the conduct relevant to counts I and II of this case, and his mother, the contents of which were provided to FBI Special Agent J.D. at a later time, Mr. McGhee expressed to his mother that he was frustrated with his absent father, frustrated with his mother (to whom he was speaking), frustrated with what the FBI did to Martin Luther King, frustrated with the FBI's failure to first call him or come to his home to afford him an opportunity to explain his actions, frustrated that [Defendant] was the subject of an investigation, frustrated that he could be accused of wrongdoing when all he does is "work and go home" and frustrated that FBI Special Agent J.D. would dare to "ask me if I did some stuff like that!".  Defendant McGhee then told his mother that he wished to squeeze the life out of FBI Special Agent J.D..   *Id.* at ¶ 19.  Defendant has been incarcerated for counts 1 and 2 since July 18, 2022 and on count 3, since December 11, 2022.

  **B.**  **History and Characteristics of Defendant**

Defendant, Cameron McGhee, is a 27-year-old African American man with no adult criminal

4

convictions or juvenile adjudications who was first diagnosed with Autistic Spectrum Disorder ("ASD"), formerly referred to as Asperger's Syndrome in its mild form, in childhood and subsequently with anxiety disorder, borderline personality disorder, and unspecified personality disorder.  *Id.* at ¶¶ 55-56, ¶106.  *See* Psychological Evaluation, Doc. # 65 at pp. 7-9 (Court PageID  #169-171).  Mr. McGhee's prognosis is considered "fair" and has positive prognostic signs that increase the likelihood he would benefit from behaviorally-based treatment intervention programs targeting problematic behaviors, including threatening statements and difficulty effectively regulating emotions as well as programs aimed at modifying his behavioral response to interpersonal frustration and perseverative rumination.  *Id.* at page 15 (Court Page Id. #177).   Mr. McGhee has not received behaviorally-based intervention treatment programs or other meaningful treatment targeting problematic behaviors associated with his ASD.

Cameron McGhee, an only child, was raised by his single mother who was instrumental in securing an ASD diagnosis for her child who was always "different".  As early as kindergarten, he did not want to eat with other children at school because he was fearful food from their mouths would get on him, he got "lost in his own mind-set", had outbursts of anger then "moved on" without apology or insight into how his actions made others feel, was a prisoner to his need to strictly adhere to routine, and "stopped talking to people" in middle school because people took seriously the things he said when he got mad.  *See*  PSI at ¶61, *See*  Psychological Evaluation at p. 4 (Court PageID #166).

In high school, complications from his disability caused challenges with his education.  His Individual Education Plan ("IEP") specified concerns and barriers to learning associated with autism spectrum disorder ("ASD").  Specifically, the IEP identified difficulties in communications with teachers and peers, correctly interpreting verbal and nonverbal cues, and making and keeping appointments independently.  The recommendations focused on behavioral strategies to ameliorate his symptoms in the academic setting.  *Id.* at pp. 5, 7 (Court PageID # 167, 169).

Directly after high school, Mr. McGhee joined the United States Air Force ("USAF").  *Id.* at p. 4

(Court PageID # 166).  Although he received numerous accolades, including an Air Force Outstanding Unit Award, Air Force Good Conduct Medal, and National Defense Service Medal during his service, he also received several letters of reprimand and disciplinary action referrals for behaviors consistent with ASD and reminiscent of the areas of difficulty specified in his IEP.  He was referred to the military hospital for a psychological exam due to reports of "bizarre" behavior but no follow-up referral for applied behavior analysis, behaviorally-based treatment, or intervention programs for ASD.  Mr. McGhee was ultimately discharged from the military under honorable conditions but pursuant to the opinion expressed by the examiner that he was not fit for duty.  *Id.* at p. 5 (Court PageID # 167).

While incarcerated for this case, Mr. McGhee received a psychological evaluation confirming his ASD ("autism spectrum disorder, requiring support for deficits in social communication and restricted, repetitive behaviors, without accompanying intellectual or language impairment") diagnosis, concluding his prognosis is fair and that Defendant's "hostility [and] aggression appeared more related to difficulty regulating emotional expression, rather than an effort to be interpersonally domineering. *Id.* at pp. 10, 15 (Court PageID #172, #177).  In Mr. McGhee's case, "there is abundant evidence …to substantiate a history of autism spectrum disorder in childhood" and a combination of behavioral observation, clinical interviews, and contemporary records of symptomatic behaviors that suggest Mr. McGhee presently experiences "significant symptoms of autism spectrum disorder". *Id.* at pp. 7, 11 (Court PageID # 169, #173).  Mr. McGhee's "aggressive responses to feelings of frustration and anger, without adequately regulating his behavior, are symptomatic of this disorder." *Id.* at p. 11 (Court PageID # 173).  Mr. McGhee's ASD "likely contributed to difficulty resisting impulses to act out aggressively with threatening statements when frustrated during the [instant offenses]." *Id.* at p. 13 (Court PageID #175).

Mr. McGhee disagrees with his "Asperberger's syndrome" diagnosis. *Id.* at p. 7 (Court ID #169).

6

    **C.**    **Supervised Release Pursuant to a Below-Guidelines Sentence Provides the Defendant with Needed Educational or Vocational Training, Medical Care or Other Correctional Treatment in the Most Effective Manner, Affords Adequate Deterrence to Criminal Conduct and Protects the Public from Further Crimes of the Defendant**

Here, it is evident that Mr. McGhee has ASD and "experiences significant symptoms of autism spectrum disorder." *Id.* at p. 11(Court PageID # 173).  It is also evident that eventually he will return to the community.  In Mr. McGhee's case, there was limited need for intensive treatment when he was younger since his symptoms of ASD were relatively mild.  *Id.* at 13 (Court PageID # 175).   However, as he has aged, his vocabulary and ability to express detailed threatening communications in response to frustration has resulted in increased interactions with authority.  *Id.* at p. 13 (Court PageID # 175).  While Mr. McGhee has been incarcerated for approximately 22 months which, clearly, has not had its desired effect, he has not previously been afforded treatment targeting his ASD.  To achieve any of the sentencing objectives before this court, important consideration should be given to his need for cognitive, behaviorally-based intervention treatment programs.  Mr. McGhee's prognosis is fair and it is believed he would benefit from participation in behavioral intervention programs.  *Id.* at 15 (Court PageID # 177).

While the Federal Bureau of Prisons Skills Program is rooted in cognitive behavioral theory, it primarily focuses on addressing and managing only those symptoms and behaviors that interfere with an individual's ability to adapt to the incarcerated setting.  *Id.* at p. 14 (Court PageID # 176).   Participants often display greater deficits in adaptive functioning than does Mr. McGhee.  Thus, it is uncertain whether Mr. McGhee would qualify for the program if sentenced to an additional term of incarceration.  Without a therapeutic element to incarceration, continued confinement is retributive in nature and delays treatment.

People with Asperger's Syndrome, by definition, struggle with empathy,[3] insight and social relationships/groups.

---

[3] Mahoney, Mark. "Asperger's Syndrome and the Criminal Law: The Special Case of Child Pornography." https:www.harringtonmahoney.com/publications (2009) at 7.

People with Asperger's Syndrome think very concretely and struggle to apply abstract concepts broadly, understand social cues and adapt to social situations.[4] Although imprisonment may be an appropriate form of punishment, "sentences based on confinement with many others…are simply not appropriate for a person with Asperger's."[5]

Since Mr. MgGhee pled guilty to class C and D felonies in the instant offenses, he is subject to a term of supervised release.  This court may order Defendant to participate in mental health treatment programs as a special condition of supervised release.  A sentence of time-served followed by a term of supervised release with the special condition that Defendant participate in mental health treatment is the most effective manner for Defendant to receive rehabilitative, correctional mental health care in furtherance of the sentencing objectives set forth in 18 U.S.C. §3553(a)(2)(A)-(D).  Additionally, the supervisory nature of supervised release makes it more likely that evidence-based interruptive treatment programs designed to target Mr. McGhee's ASD-related problematic behaviors will not only be identified and implemented but that Mr. McGhee will participate.

> D.  **Supervised Release Pursuant to a Below-Guidelines Sentence Reflects the Seriousness of the Offense, Promotes Respect for the Law and Provides Just Punishment**

The offenses in the instant case are serious.  However, a longer period of incarceration would do little to promote respect for the law or provide just punishment.  Similarly situated defendants who commit assault pursuant to 18 U.S.C. 351(e), applying section §2A2.3 often receive guideline range sentences that are below the guideline range in this case. Given the fact that Mr. McGhee's mental health and ASD played such a significant role in the instant offense, a below guideline sentence of time-served combined with behaviorally-based mental health treatment reflects the seriousness of the offenses in this case, promotes respect for the law and provides just punishment to Mr. McGhee who is a first time, non-

---

[4] *Id.* at 52.

[5] *Id.* (citing Patrick, Sharon. "Adults and Adolescents with Asperger's syndrome." 14 WISCONSIN DEFENDER 1 (Winter/Spring 2006).

8

violent offender.

Wherefore, based upon the totality of information available to the Court, counsel requests this Court find a sentence below the advisory guideline range is sufficient to meet the sentencing objectives before this Court when determining the appropriate sentence in this cause and requests a below guidelines-sentence with a period of supervised release during which time defendant will continue to participate in cognitive-based treatment programs.

Respectfully submitted,

**LAW OFFICE OF HARTMANN, DUFFE & PEGRAM**

By: /s/Cira R. Duffe
Cira R. Duffe                    #49506
101 E. Columbia Street
Farmington, Mo  63640
573-756-8082 (phone)
duffe@hdp-law.com

**CERTIFICATE OF SERVICE**

    Cira R. Duffe certifies that on the 23rd day of May, 2024, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Christine Krug
Assistant United States Attorney

Kanisha DeJean
U.S. Probation Officer

                                                  /s/ Cira R. Duffe